IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIE CHURCH, *Plaintiff,* | § § § § | |
| v. | § § | CIVIL ACTION NO. 2:23-CV-00074 |
| ROMEO RANGEL, *et al.,* *Defendants.* | § § § | |

### DEFENDANTS' RANGEL, CAVAZOS, AND STRACK
### MOTION FOR SUMMARY JUDGMENT

Defendants Aaron Cavazos ("Cavazos"), Romeo Rangel ("Rangel") and Sven Strack ("Strack") (collectively "Defendants"), by and through the Office of the Attorney General of Texas, file this Motion for Summary Judgement pursuant to Federal Rule of Civil Procedure 56. In support of their motion, Defendants respectfully offer the following:

### I.   STATEMENT OF THE CASE

Plaintiff Willie Church ("Plaintiff") is an inmate confined to the custody of the Texas Department of Criminal Justice ("TDCJ"). Proceeding *pro se* and *in forma pauperis*, Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights by Defendants, all TDCJ correctional officers. ECF No. 18-1("*Compl.*"). Specifically, Plaintiff claims that on June 21, 2021, Cavazos "excessively exposed" Plaintiff to "an abundant amount of O.C. spray." *Id.* at 4. Plaintiff further claims that after he was sprayed, Rangel and Strack left Plaintiff without "proper decontamination" anywhere between "over an hour and [a] half" and three hours in violation of TDCJ policy. *Id.* at 4, 12-13. Plaintiff seeks compensatory and punitive damages. *Id.* at 4. On April 25, 2023, the Court held a *Spears* hearing and retained Plaintiff's individual capacity claims for money damages. ECF No. 18-1 at 20-21. Defendants now move for summary judgment dismissal of those claims.

1

## II.     ISSUES PRESENTED

A.   Whether Plaintiff failed to exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act ("PLRA").

B.   Whether there are any genuine issues of material fact precluding summary judgment with respect to Plaintiff's Eighth Amendment claims.

E.   Whether Plaintiff has overcome Defendants' entitlement to qualified immunity.

## III.    SUMMARY JUDGMENT EVIDENCE

Exhibit A:   Plaintiff's TDCJ Grievance records, with business records affidavit (bates stamped 00984-01258). Under seal.

Exhibit B:   Office of Inspector General Investigation, with business records affidavit (bates stamped 00024-00107).

Exhibit C:   Emergency Action Center System Incident Report, with business records affidavit (bates stamped 00020-00023).

Exhibit D:   Plaintiff's TDCJ Medical Records (bates stamped 00260-00798). Under seal.

## IV.    STATEMENT OF FACTS

At all times relevant to his allegations, Plaintiff was incarcerated by the TDCJ at the William G. McConnell Unit. *Compl.* at 4. At all times relevant to Plaintiff's allegations, Defendants acted under the color of state law. See generally *Compl.* On June 20, 2021, Plaintiff assaulted a correctional officer and was charged with Staff Assault. Exhibit B at No. 00029. Plaintiff later claimed to be suicidal and was placed in Constant Direct Observation ("CDO") as a result. *Id.* at 00059. Lieutenant Cavazos ordered Plaintiff to submit to a strip search, to which Plaintiff refused to obey. *Id.* at 00032-33. Lieutenant Strack arrived on scene, gave Plaintiff orders to comply to the strip search. *Id.* at 00094. Plaintiff refused to comply and Lieutenant Strack left the scene. *Id.* Lieutenant Cavazos then administered chemical agents to gain compliance. *Id.* at 00059. Plaintiff refused and was given several more orders but refused to comply with the strip search order causing him to be sprayed again. *Id.* at 00033. After the third employment of chemical agents, Plaintiff complied with the strip search order.

2

*Id.* at 00059. Medical arrived on scene and evaluated inmate Church for injuries, to which none were reported or observed. *Id.*

Plaintiff alleges that on or about June 21, 2021, Plaintiff was "exposed to … O.C. spray by Lieutenant Aaron Cavazos." *Compl.* at 4. Plaintiff further alleges that he was left in a cell without decontamination by Lieutenant Romeo Rangel and Lieutenant Sven Strack for over an hour and a half. *Id.* Additionally, Plaintiff alleges that both Lieutenant Rangel and Strack denied Plaintiff medical attention. *Id.*

## V. STANDARD OF REVIEW

A defendant is entitled to summary judgment dismissal if there is no genuine issue as to any material fact. Fed. R. Civ. 56(c). Summary judgment is warranted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "A fact is material only if its resolution would affect the outcome of the action, and an issue is genuine only 'if the evidence is sufficient for a reasonably jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)).

Ordinarily, the party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, when the defendant invokes the defense of qualified immunity, the qualified immunity defense alters the burden of proof placed on the non-moving plaintiff at the summary judgement stage. *Bishop v. Karney*, 408 F.App'x 846, 848 (5th Cir. 2011). Moreover, once the defendant pleads that he acted in good faith and is entitled to qualified immunity, the burden shifts to the plaintiff to prove that (1) the defendant's conduct violated a statutory or constitutional right of the plaintiff, and (2) the violated statutory or constitutional right was clearly established so that the defendant's actions were

not objectively reasonable. *Id.* The plaintiff cannot rely on conclusory allegations or assertions in negating the qualified immunity defense. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Rather, he must produce competent summary judgment evidence that gives rise to a genuine issue of material fact as to each element of the alleged statutory or constitutional violation. *Id.* The plaintiff must then show that, at the time that the challenged conduct occurred, the contours of the violated right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right. *Stauffer v. Gearheart*, 741 F.3d 574, 583 (5th Cir. 2014).

Importantly, some disagreement among the parties as to the facts will not prevent summary judgment. *See Anderson*, 477 U.S. at 248 (stating that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact*") (emphasis in original). The Fifth Circuit has also repeatedly held that "self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence." *Smith v. Southwestern Bell Tel. Co.*, 456 F.App'x 489, 492 (5th Cir. 2012); *Lechuga v. Southern Pacific Trans. Co.*, 949 F.2d 790, 798 (5th Cir. 1992) ("[C]onclusory statements … do not provide facts that will counter summary judgement evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment").

## VI.     ARGUMENT

**A.     Plaintiff failed to exhaust administrative remedies before filing suit as required by the PLRA.**

Under the PLRA, a prisoner must exhaust all administrative remedies before filing suit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title … until such administrative remedies as are available are exhausted."). The exhaustion requirement applies to all inmate suits regarding prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

*Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has repeatedly emphasized the absolute and mandatory nature of the exhaustion requirement. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The exhaustion requirement applies to all inmate suits regarding prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison inmate grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 578 U.S. 632, 639 (2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules…" *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The purpose of this exhaustion requirement is to "give an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and for the resolution of a claim at the agency level because it is faster and more economical than litigation in federal court. *Woodford*, 548 U.S. at 89. The PLRA "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Jones*, 549 U.S. at 204. Prior to *Jones*, the Fifth Circuit emphasized this concern in *Johnson v. Johnson*, where the court held that prison administrators must have "a fair opportunity under the circumstances to address the problem that will later for the basis of suit." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). To determine the level of detail required to provide sufficient notice to the prison depends on they type of claim asserted. *Id.* at 517. As the Fifth Circuit explained:

> If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know—and a prison could ordinarily be expected to provide—details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter. In contrast, a grievance in which an inmate says that his cell is habitually infested with vermin, or that the prices in the commissary are

5

> too high, could adequately alert administrators to the problem whether or not the grievance names anyone.

*Id.* TDCJ has a formal two-step administrative grievance process. *See* Offender Orientation Handbook[1] at 73-74; *see also Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). A Step 1 Grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *Id.* at 74. Once an inmate receives a response to his Step 1 grievance, he then has fifteen days to file a Step 2 grievance to appeal an unfavorable result at the state level. *Id.* New issues cannot be raised for the first time in a Step 2 grievance appeal and only one issue per grievance may be presented. *Randall v. Woods*, 299 F.App'x 466, 467 (5th Cir. 2008). Substantial compliance with this process is not enough to exhaust remedies under the PLRA. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion…."). A Texas prisoner must pursue a grievance through both steps and meet all deadlines in order to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

    i.    **Plaintiff failed to exhaust his administrative remedies in compliance with TDCJ's deadlines and other critical procedural rules.**

On August 3, 2021—Fortyfour days after the alleged use of force—Plaintiff submitted a Step 1 Grievance No. 2021145404. Exhibit A at No. 01188-1189. In his grievance, Plaintiff generally complains that he was the victim of retaliation, deliberate indifference, and cruel and unusual punishment at the McConnell Unit. *Id.* at 01188 ("I have grieved and wrote Ombudsman myself

---

[1] Defendants ask that the Court take judicial notice of this handbook, which is publicly available at www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf (last visited November 13, 2023). This information is subject to judicial notice because the information is publicly available online and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b).


multiple times, about the retaliation and other issues I've endured on McConnell Unit.") *Id.* He further writes, "*All of the events* have been documented…." *Id.* (emphasis added).

The closest Plaintiff comes to specifying any details alleged in Plaintiff's Complaint is when he writes "I have been mistreated, even had my disciplinary due process bluntly violated post an event that took place on J-2 Section on 6-20-21." *Id.* But even this language is too vague for any reader to understand the issue in which Plaintiff complains of. Is the issue the alleged violation of due process during his disciplinary hearing? Or does the issue concern the "event" that took place on June 20, 2021? Or, are these two one and the same? The reader simply does not know. Plaintiff only confuses the issue further by writing, "Please review my previous grievances and letters to Ombudsman if you will." Moreover, as the "Action Requested" to resolve your Complaint portion, Plaintiff wrote, "Please send me to another unit where I am not targeted or will be retaliated on, before they silence me." *Id.* at 01189. When Plaintiff drafted and submitted this grievance, he was residing in at the Wayne Scott Unit, thus making his requested relief moot at the time he submitted this grievance. *Id.* at 01188.

TDCJ reviewed the grievance and responded to the issues with the limited information provided to them by Plaintiff. The grievance response stated:

> "Your grievance has been reviewed. There is no evidence to substantiate your allegation of staff retaliating against you or of staff violating policy. Employees are instructed to adhere to all agency rules and regulation, sustained violations are dealt with in accordance with agency policy and not subject for disclosure. No further action is warranted by this office."

*Id.* at 01189. Nothing in this response, or in the investigation which led to this response (Ex. A at 01190-1201) indicates that TDCJ was given notice of Plaintiff's specific complaints against Defendants. As such, Step One Grievance No. 2021145404 was insufficient for PLRA purposes.

Unsatisfied with TDCJ's response to Grievance No. 2021145404, Plaintiff submitted a Step Two grievance which he mentions, *for the first time*, the specific actions by Defendants complained of in this action. Ex. A at 01200. The law is clear, however, that issues raised for the first time in Step

Two grievances are not considered fully exhausted. *See* Randle v. Woods, 299 Fed.Appx. 466, 467 (5th Cir. 2008).

Other than Grievance No. 2021145404, Plaintiff's only other grievance even remotely related to the events giving rise to this lawsuit is Grievance No. 202112648. Ex. A at 00992-993. In it, Plaintiff complains of a disciplinary he received as the result of an incident involving an Reyes on June 20, 2021, and specifically about the lack of notice he received before the disciplinary. *Id.* at 00992. Nowhere in the grievance does Plaintiff complain about any of *Defendants'* actions, however. In the Action Requested to resolve your Complaint portion of the grievance form, Plaintiff wrote, "I'd like for this case to be overturned and I be properly re-housed on medium custody." *Id.* at 00993. The response to this grievance, accordingly, focused on the adequacy of Plaintiff's disciplinary proceedings and his request for a housing change. *Id.* This grievance cannot plausibly be interpreted as providing TDCJ notice of his claims against Defendants.

**C.     There is no evidence of personal involvement by Strack or Rangel.**

A Section 1983 plaintiff must establish a causal connection between an alleged constitutional deprivation and each defendant whom he would hold responsible. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). A civil rights plaintiff cannot simply make generalized allegations or assert legal or constitutional conclusions to satisfy these requirements. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). To sustain his complaint, a plaintiff must instead state particular facts specifying the personal involvement of *each* defendant. *Fee v. Herndon*, 900 F.2d 804 (5th Cir.) cert. denied, 498 U.S. 908 (1990). These facts must create an affirmative link between the claimed injury and the defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). Additionally, supervisory officials may not be held liable for their subordinates' actions under any theory of vicarious liability under Section 1983. *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985) (per curiam).

Although Plaintiff asserts in a conclusory fashion that Strack and Rangel were deliberately indifferent to Plaintiff's serious medical need, the record does not show any substantive involvement by either defendant. The OIG investigation shows that Strack arrived and left the scene prior to the use of chemical agents., and thus could not have plausibly been involved in denying Plaintiff medical care *after* the use of chemical agents. Exhibit B at 00096; 00099. With respect to Rangel, there is no mention of him in the record other than being cc'd on an email concerning a separate use of force on June 20, 2021.  Exhibit A at 00047-0048. Thus, all of Plaintiff's claims against Strack and Rangel must be dismissed for lack of personal involvement.

**C.    Cavazos is entitled to judgment as a matter of law with respect to Plaintiff's Eighth Amendment excessive use of force claim.**

The Eighth Amendment protects inmates from the use of excessive force. However, the Supreme Court has observed that "[e]nsuring security and order at [an] institution is a permissible nonpunitive objective whether the facility houses pretrial detainees, convicted inmates, or both." *Bell v. Wolfish*, 441 U.S. 520, 561 (1979). "[N]ot…every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Rather, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline or, maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6. Several factors are used to make the determination of whether unnecessary and wanton infliction of pain was used in violation of plaintiff's rights. *See Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). The *Hudson* factors include: a) the extent of the injury suffered; b) the need for the application of force; c) the relationship between the need and the amount of force used; d) the threat reasonably perceived by the responsible officials; and, e) any efforts made to temper the severity of a

9

forceful response. *Id.* "The amount of force that is constitutionally permissible…must be judged by the context in which that force is deployed." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).

Here, Plaintiff alleges that Cavazos used excessive force by deploying a chemical agent against him following his refusal to comply with a strip search. *Compl.* at 17. Applying the *Hudson* factors, it is clear that Cavazos's use of force was not unconstitutionally excessive.

   i. **The extent of the injury suffered.**

Plaintiff alleges that, after he was sprayed by a chemical agent, he was left without proper decontamination, causing him to urinate and defecate uncontrollably while drifting in and out of the consciousness. *Compl.* at 4. Plaintiff claims he was not seen by medical until from anywhere between an hour and a half and three hours. *Id.* at 4; 12. And as a result of the chemical agent spray, Plaintiff claims to his vision has not returned to normal. *Id.* at 13. Plaintiff's medical records refute such claims.

According to an investigation by the Office of the Inspector General ("OIG"), the use of force occurred at approximately 5:48 p.m. on June 20, 2021. Exhibit B at No. 00029. Medical records kept by TDCJ show that Plaintiff was seen about half an hour after the use of force by a Licensed Vocational Nurse at approximately 6:19 p.m. Exhibit D at No. 00602-607. Plaintiff was assessed for psychiatric symptoms but refused to answer if he was having suicidal ideation, resulting in a referral to crisis management. *Id.* at 00606. At 6:52 p.m., about half an hour after Plaintiff was assessed for any psychiatric symptoms, Plaintiff was seen again by another Licensed Vocational Nurse. *Id.* at 00601. During that visit, Plaintiff denied any injuries or respiratory difficulty after the use of force. *Id.* The nurse, after visually observing Plaintiff noted no visible injuries or respiratory distress. *Id.* And in her professional medical opinion, assessed Plaintiff to have suffered no adverse health effects from the use of force, and Plaintiff was released to security. *Id.*

While Plaintiff did complain of problems blurry vision and burning eyes after the use of force when he was seen for a visual acuity test on July 17, 2021, he also alerted his medical provider that he

"had glasses before but haven't had them now in a long time." *Id.* at 00326. Additionally, on September 7, 2021, Plaintiff submitted a sick call request and was seen by a nurse cell side complaining again of blurry vision after the use of force. The Inpatient Nursing Progress Note provides the following:

> "Seen cell side for complaints. Inmate never made eye contact with this writer during assessment. He held his head at an angle and looked at the wall. Claimed that since the gassings he has trouble seeing. He was able to walk from the back bunk to the cell door without difficulty. Sclera to both eyes slightly reddened. He could not say how well he could make out objects in sight. He does not appear otherwise to be in distress. Noted, also to have tissues stuck in both ears."

*Id.* at 00375. These injuries, by any definition, are minor, and thus the first *Hudson* factor weighs heavily in Defendants' favor. *See Martin v. Seal*, 510 Fed.Appx. 309 (5th Cir. 2013) (case in which the plaintiff complained of asthma and back pain).

  **ii.**  **The need for the application of force.**

The application of force was necessary because Plaintiff *admittedly* refused multiple orders to comply with a necessary strip search following his alleged assault of an officer. Exhibit B at 00029-30. In his OIG interview, Plaintiff recounted the following series of events:

> [Plaintiff] stated that on June 20, 2021, he was accused of assaulting Officer Reyes and was taken to 12 Building and placed in a holding cell. [Plaintiff] stated that Lieutenant [] Cavazos ordered him to submit to a strip search and he refused to obey the order. [Plaintiff] stated that he was given several more orders and he continued to refuse…. [Plaintiff] stated that Lieutenant Cavazos did not violate any policy by administering chemical agent, but due to him (Church) not verbally responding back to Lieutenant Cavazos, Lieutenant Cavazos should not have sprayed him."

Ex. B at at 00032-33.

This account is supported by the Use of Force video, which depicts Cavazos ordering Plaintiff several times to comply with a strip search and explaining the consequences of noncompliance. *Id.* at 0029-30; 00094. When Plaintiff continued to refuse all orders, Cavazos administered chemical agents to gain compliance. *Id.* at 00035. After the third use of chemical spray, Plaintiff finally complied with the strip search. *Id.* The chemical spray was therefore necessary to gain compliance after repeated

failures to follow orders. *See, e.g., Martin v. Seal*, 510 Fed.Appx. 309 (5th Cir. 2013) (use of chemical spray was not excessive where inmate ignored multiple orders).

### iii.     The relationship between the need and the amount of force used.

Plaintiff did not comply with the strip search orders after the first chemical spray. Exhibit B at 00032-33. He did not comply after the second chemical spray. *Id.* Only after the third chemical spray did he comply, at which point Cavazos immediately ceased applying any force. *Id.* The force was proportional to the need to gain Plaintiff's compliance.

### iv.     The threat reasonably perceived by Cavazos.

Prior to the use of force, Plaintiff had been accused of assaulting another TDCJ officer. *Id.* Plaintiff was then placed in Constant Direct Observation for claiming to be suicidal. *Id.* at 00035. Once on Constant Direct Observation, Plaintiff was asked to strip search prior to securing the cell and Plaintiff refused several orders. *Id.* Cavazos acted with a good faith effort to safely secure a man he believed to be suicidal so that he could not cause harm to himself or others. Because Plaintiff had just assaulted another officer and was now asserting he was suicidal, the threat perceived by Cavazos was objectively reasonable at the time the use of force occurred. See *Stephens v. City of Sachse*, No. 4:15CV560, 2016 WL 4411523, at *1 (E.D. Tex. July 13, 2016), *report and recommendation adopted*, No. 4:15CV560, 2016 WL 4368704 (E.D. Tex. Aug. 16, 2016).

### v.     Efforts made to temper the severity of a forceful response.

Cavazos made attempts to avoid the necessity of administering chemical spray on Plaintiff by *repeatedly* requesting him to comply with the strip search and explaining the consequences of noncompliance. And, rather than simply administering the chemical spray in one continuous burst, Cavazos applied three small bursts, after each of which he gave Plaintiff an opportunity to comply without the need for additional force. Exhibit B at 00032-33. These facts are indicative or a sincere effort to mitigate the severity of a forceful response to Plaintiff's noncompliance.

\* \*. \*. \*. \*

Because each of the *Hudson* factors weigh in favor of Cavazos, Plaintiff fails to create a fact issue precluding the grant of summary judgment in his favor.

**D.     Defendants are entitled to judgment as a matter of law with respect to Plaintiff's medical deliberate indifference claim.**

Deliberate indifference to an inmate's serious medical needs constitutes "unnecessary and wanton infliction of pain" and is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir.2006) (citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). This standard "exists wholly independent of an optimal standard of care." *Gobert v. Caldwell,* 463 F.3d 339, 349 (5th Cir. 2006).

To establish a deliberate indifference claim, the plaintiff must show that the defendant was (1) aware of the facts from which he could infer an excessive risk to the prisoner's health and safety, and (2) that he actually inferred there was an excessive risk to the prisoner's safety. *Easter* at 837. For a prison official to be held liable for deliberate indifference, the official must "know of and disregard an excessive risk to inmate health and safety.*" Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837) (emphasis added). Deliberate indifference under the Eighth Amendment requires a showing of "subjective recklessness" as used in criminal law. *Farmer v. Brennan*, 511 U.S. 825 (1994).

In *Domino v. Texas Dep't of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference:

> "Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant

13

>risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838."

239. F.3d 752, 756 (5th Cir. 2001).

A physical injury is actionable under the Eighth Amendment if it is "an observable or diagnosable medical condition requiring treatment by a medical care professional." *Luong v. Hatt,* 979 F. Supp. 481, 486 (N.D. Tex. 1997). Similarly, "a serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell,* 463 F.3d 339, 345 n.12 (5th Cir. 2006). Where the ailment complained of presents no "true danger" or "serious threat" to his health, no serious medical need exists. See *Dickson v. Colman,* 569 F.2d 1310, 1311 (5th Cir. 1978). Further, "[u]nsuccessful medical treatment, acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

Negligence, neglect, or medical malpractice does not constitute deliberate indifference. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1993) (citing *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979)). Gross negligence does not rise to the level of deliberate indifference. *Hare v. City of Corinth,* 74 F.3d 633, 645 (5th Cir. 1996). When the medical records reflect assessment and treatment of an inmate's medical complaints, there is no deliberate indifference. *McCord v. Maggio,* 910 F.2d 1248, 1251 (5th Cir. 1990). To the extent that there is an alleged delay in treatment, such a delay "can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Easter,* 467 F.3d at 464 (quotation omitted).

Here, Plaintiff alleges that after he was sprayed by a chemical agent, Defendants left him without proper decontamination, and he was not seen by medical until anywhere between an hour and a half to three hours. *Compl.* at 4; 12. However, Plaintiff's medical records refute these allegations.

According to the OIG investigation, the use of force occurred at approximately 5:48 p.m. on June 20, 2021. Exhibit B at No. 00029. Medical records kept by TDCJ show that Plaintiff was seen about **half an hour** after the use of force by a Licensed Vocational Nurse on June 20, 2021, at approximately 6:19 p.m. Exhibit D at No. 00602-607. Plaintiff was assessed for psychiatric symptoms but refused to answer if he was having suicidal ideation, resulting in a referral to crisis management. *Id.* at 00606. At 6:52 p.m. about half an hour after Plaintiff was assessed for any psychiatric symptoms, Plaintiff was seen again by another Licensed Vocational Nurse, to be assessed after the use of force. *Id.* at 00601. Plaintiff was then instructed of decontamination procedures. Exhibit C at 00023. The records show that Plaintiff denied any injuries or respiratory difficulty after the use of force. Exhibit D. at 00601. The nurse, after visually observing Plaintiff noted no visible injuries or respiratory distress. *Id.* And in her professional medical opinion, assessed Plaintiff to have suffered no adverse health effects from the use of force, and Plaintiff was released to security. *Id.*

Plaintiff's claims against Defendants are at most a claim of delay in treatment. But such a claim can only be successful if it the deliberate indifference results in a substantial harm. *Easter,* 467 F.3d at 464. The medical record shows no substantial harm. Nor does the record provide any evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Dickson v. Colman,* 569 F.2d 1310, 1311 (5th Cir. 1978). Therefore, Plaintiff's medical deliberate indifference claims are belied by the evidence and subject to summary judgment dismissal.

**E.     Plaintiff fails to overcome Defendants' entitlement to qualified immunity.**

Government officials performing discretionary functions are shielded from suit and liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818. The Fifth Circuit has emphasized the extent of this shield, finding that a government official is entitled to qualified immunity unless all reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).

Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense."). In determining whether the plaintiff has successfully overcome the qualified immunity defense, the court engages in a two-step inquiry. First, the court must consider "whether the plaintiff asserted a violation of a constitutional right at all—prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (internal quotation marks omitted); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir. 1991) (holding that *Siegert* requires a plaintiff first to allege a constitutional violation before a court will decide whether the right is "clearly established"). In making this assessment, the court uses "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

If a plaintiff has not cleared this first hurdle, the court need not further address the question of qualified immunity. However, if the court finds that the plaintiff has shown the violation of a constitutional right, the court must go on to determine if the defendant official's actions could reasonably have been thought consistent with that right. *Siegert*, 500 U.S. at 230.

In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed. *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992) (citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. (1993)); *Valencia v. Wiggins*, 981 F.2d 1440, 1448 (5th Cir.) *cert. denied*, 113 S.Ct. 2998 (1993); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990). Regardless of a defendant official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity. Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638.

As discussed above, Plaintiff's allegations fail to create an issue of material fact demonstrating how any Defendant violated a clearly established Constitutional right. Cavazos's employment of chemical agents to gain compliance was not an excessive use of force, and Defendants did not act with deliberate indifference to Plaintiff's serious medical needs. On this basis alone, Defendants are entitled to qualified immunity and Plaintiff's claims should be dismissed.

Even assuming arguendo, however, that the Court finds a violation of Plaintiff's constitutional rights, this is not enough to overcome Defendants' qualified immunity. The Court must then proceed to the next step of the analysis, which is to determine whether Defendants' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002); see also *McClendon*, 305 F.3d at 323 (ruling that "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established") (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In order for the law to be classified as "clearly established," the case law must draw a bright line: "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel

(not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what Defendant is doing violates federal law in the circumstances." *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998). The primary question at this point in the inquiry, therefore, is "whether the state of the law at the time of the state action gave [Defendant] fair warning that his alleged treatment of the [Plaintiff] was unconstitutional." *Roe*, 299 F.3d at 409 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established. [That] inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *McCoy v. Alamu*, 950 F.3d 226, 232 (5th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

There are two ways a plaintiff may show that an alleged right is clearly established. *Rombach v. Culpepper*, No. 2020-30554, 2021 WL 2944809, at *6 (5th Cir. July 13, 2021). First, "the plaintiff may identify a case or body of relevant case law in which an officer acting under similar circumstances was held to have violated the Constitution." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (cleaned up). While there is no requirement that a case be "directly on point for a right to be clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix*, 577 U.S. at 13). To settle this debate, one can only look to Supreme Court jurisprudence. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity.").

Alternatively, the plaintiff may demonstrate that "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Batyukova*, 994 F.3d at 726 (quoting *Wesby*, 138 S. Ct. at 590). "This second approach is reserved for only rare, 'obvious cases.'" *Rombach*, No. 2020-30554, 2021 WL 2944809, at *6.

Here, Plaintiff cannot provide any case law supporting that Defendants' actions violated his constitutional rights. Moreover, in *Martin v. Seal*, a case which parallels Plaintiff's claims, the defendants were meritorious and the claims against them were dismissed on remand. *See Martin v. Seal*, No. 11-726-DEK, 2014 WL 2890125, *4 (E.D. La. June 25, 2014). Even taking Plaintiff's allegations as true, he fails to show the unlawfulness of the Lieutenants' conduct is sufficiently clear. Defendants actions do not implicate a violation of a right that has been clearly established.

## VII.   CONCLUSION

For the reasons described above, Defendants respectfully request that the Court grant their motion for summary judgment.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

/s/ *Matthew DeMarco*
**MATTHEW DEMARCO**
Assistant Attorney General
Texas State Bar No. 24130474
Attorney-in-Charge

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814
Matthew.demarco@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**

**NOTICE OF ELECTRONIC FILING**

I, **MATTHEW DEMARCO**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true and correct copy of **Defendants' Motion for Summary Judgment** in accordance with the Electronic Case Files System on November 13, 2023.

/s/ *Matthew DeMarco*
**MATTHEW DEMARCO**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **MATTHEW DEMARCO**, Assistant Attorney General of Texas, certify that a true and correct copy of **Defendants' Motion for Summary Judgment** has been served by placing it in U.S. Mail, postage prepaid, within one business day of November 13, 2023, addressed to:

| | |
|---|---|
| Willie Church # 02202661<br>Bill Clements Unit<br>9601 Spur 591<br>Amarillo, TX 79107-9606<br>**Plaintiff Pro Se** | CMRRR 7017 2680 0000 5250 6416 |

/s/ *Matthew DeMarco*
**MATTHEW DEMARCO**
Assistant Attorney General